**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **TYLER HOOD, Individually and on behalf of all others similarly situated,** | § § § | |
| *Plaintiff*, | § § | **CASE NO. 3:22-292** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **CAPSTONE LOGISTICS, LLC,** | § § § | |
| *Defendant*. | § | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Tyler Hood ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys Schneider Wallace Cottrell Konecky LLP, brings the following action for violation of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"). Plaintiff states the following against Capstone Logistics, LLC ("Capstone" or "Defendant"):

### INTRODUCTION

1.      Plaintiff brings this class and collective action on behalf of himself and other similarly situated individuals who have worked for Capstone anywhere in the United States as hourly, non-exempt employees including but not limited to unloaders (also known as lumpers), team leads, clerks, carriers, and other positions with similar job duties ("Unloaders"). This action challenges Capstone's minimum wage and overtime violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), as well as the wage, hour, labor, and other applicable laws of the State of North Carolina.

2. Capstone has over 550 office locations across the United States and in Canada. Capstone has office locations in virtually every state of the United States. From these locations, Capstone recruits and hires Unloaders as hourly non-exempt employees to support its operations of warehousing and fulfillment, freight management, and last mile delivery.

3. Plaintiff and other Unloaders are hourly non-exempt employees under federal and state wage-and-hour laws and should receive minimum wage and overtime pay consistent with the requirements of those laws. However, Capstone does not pay Plaintiff and Unloaders proper minimum wage and overtime compensation as required by law. By requiring Plaintiff and Unloaders to work beyond scheduled shift while "off-the-clock", Capstone decreases Plaintiff's and other Unloaders' hourly rates of pay, often so that the rates fall below the requisite minimum and time-and-a-half rates required by Federal and state law. These employees perform substantially the same job duties and responsibilities and are compensated pursuant to common company-wide policies. Plaintiff and Unloaders are similarly situated under Federal Rule of Civil Procedure 23 and the FLSA.

4. Plaintiff sues on behalf of himself and other similarly situated workers who have worked and/or are currently working for Capstone, and who elect to opt into this action pursuant to the collective action provision of the FLSA. This action claims that Capstone has violated and continues to violate the wage-and-hour provisions of the FLSA by depriving Plaintiff, as well as those similarly situated to Plaintiff, of their lawful minimum wage and overtime wages.

5. The national FLSA Collective ("Collective"), represented by Plaintiff Hood, is comprised of all people who are or have been employed by Capstone as Unloaders and other positions with similar job duties within the United States from the three years prior to this action's filing date through the final disposition of this action ("Collective Time Period").

6.     Plaintiff and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount in liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b). Plaintiff further seeks equitable tolling for those Collective Members who have not yet received notice and opportunity to consent to join the Collective.

7.     Plaintiff also brings this action under the NCWHA. The North Carolina Class, represented by Plaintiff, is comprised of all people who are or have been employed by Capstone as Unloaders and other positions with similar job duties in the State of North Carolina within the two years preceding the filing of this action ("North Carolina Class Period"). Plaintiff intends to seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the North Carolina Class.

8.     Plaintiff and the North Carolina Class Members seek unpaid wages and restitution pursuant to the NCWHA, as well as liquidated damages, penalties, prejudgment interest, attorneys' fees, and costs as allowed by North Carolina law.

9.     Accordingly, Plaintiff brings this action on behalf of himself and on behalf of a class of similarly situated persons who have worked as unloaders, non-exempt team leads, clerks, carriers, and other positions with similar job duties for Defendant in North Carolina ("the Class Members") for statutory violations that stem from these wage violations.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. §§ 201, *et seq.*

11.     This Court has supplemental jurisdiction over Plaintiff's North Carolina state law claims pursuant to 28 U.S.C. § 1367 because these claims derive from a common nucleus of operative facts.

12.     Venue in the Western District of North Carolina is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred on Defendant's work sites within this district.

13.     Defendant is subject to personal jurisdiction in this District because Defendant is a foreign corporation that conducts substantial and continuous commercial activities in this District. Defendant operates work sites within this District on which Plaintiff, Class, and Collective Members performed their work.

14.     Defendant is subject to specific personal jurisdiction in North Carolina because Defendant solicits business to take part in North Carolina, hires North Carolina workers to work in North Carolina, and because the facts giving rise to the FLSA and North Carolina state law violations complained of here arose while Defendant's employees performed work in North Carolina.

15.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2202.

## **THE PARTIES**

16.     Plaintiff Tyler Hood is a resident of Charlotte, North Carolina. Plaintiff was employed by Defendant to work in Charlotte, North Carolina from approximately February 2021 through February 2022.  From approximately February 2021 through May 2021, Plaintiff was employed by Defendant as an unloader, and was qualified as a non-exempt, hourly employee during this time. From approximately August 2021 through February 2022, Plaintiff was employed

by Defendant as an unloader, team lead, and clerk, and was qualified as a non-exempt, hourly employee during this time. Between approximately May 2021 through August 2021, Plaintiff worked for Defendant as a supervisor and was qualified as an exempt salaried employee during this time.

17. The Collective Members are all hourly, non-exempt employees who are or have been employed by Defendant in the United States within the Collective Time Period.

18. The Class Members are all hourly, non-exempt employees who are or have been employed by Defendant in the State of North Carolina within the Class Time Period.

19. Plaintiff is informed, believes, and thereon alleges that Defendant Capstone is a foreign corporation with locations in virtually every state across the country. Defendant is headquartered in Peachtree Corners, Georgia. Capstone is part of the transportation industry and provides the corporations with which it contracts with warehousing and fulfillment services, freight management services, and last mile delivery services. Defendant recruits and hires employees who perform work across the United States, including in North Carolina. Capstone may be served with process by serving its registered agent, Cogency Global, Inc., 212 S Tyron Street Suite 1000, Charlotte, North Carolina.

20. At all material times, Defendant was and is legally responsible for the unlawful conduct, policies, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff, the Collective, and the North Carolina Class.

21. At all material times, Defendant has been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d) as well as under the NCWHA.

22. Defendant, as employer of Plaintiff, Class, and Collective members throughout the relevant time period, is liable for damages and penalties for violating the FLSA, NCWHA, and

other state laws, rules and regulations with respect to the employment of Plaintiff and Collective members in the United States, as well as the employment of Plaintiff and Class Members in North Carolina.

23.     At all material times, Defendant has been and is governed by and subject to the FLSA, 29 U.S.C. § 201, *et seq.*

24.     At all material times, Defendant has been and is an enterprise within the meaning of section 3(r). 29 U.S.C. § 203(r).

25.     At all material times, Defendant has been and is an enterprise or enterprise in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Defendant has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

26.     At all material times, the unlawful conduct against Plaintiff, Collective, and Class Members as described in this Complaint was actuated, in whole or in part, by a purpose to serve Defendant. At all relevant times, upon information and belief, the unlawful conduct described in this Complaint was reasonably foreseeable by Defendant and committed under actual or apparent authority granted by Defendant such that all aforementioned unlawful conduct is legally attributable to Defendant.

27.     At all material times, Defendant have had an annual gross business volume of not less than $500,000.

## **STATEMENT OF FACTS**

28.     Defendant Capstone contracts with various corporations throughout North Carolina and the United States to provide warehousing and fulfillment services, freight management services, and last mile delivery services.

29.     Plaintiff, Class, and Collective Members perform their work for Defendant in North Carolina and across the United States.

30.     Plaintiff worked for Defendant as an unloader in Charlotte, North Carolina, from approximately February 2021 through May 2021; as a supervisor from approximately May 2021 to August 2021; and as an unloader, team lead, and clerk, from approximately August 2021 through February 2022. While Plaintiff's shift varied in length, Plaintiff usually worked ten hours or more per shift, five shifts per week. Plaintiff worked approximately 50 hours or more per week.

31.     Plaintiff was compensated at an hourly rate of approximately $7.50, and/or was paid "production pay" of approximately $20 to $25 per unloaded truck on average.

32.     Defendant pays Class and Collective Members, including Plaintiff, on an hourly rate basis and/or based on a piece-rate basis based on a total dollar value for piece-rate work for unloaded trucks.

33.     Plaintiff is informed, believes, and thereon alleges that Defendant employs and has employed thousands of hourly, non-exempt workers similarly situated to Plaintiff nationwide, including in North Carolina.

34.     Plaintiff is informed, believes, and based thereon, alleges that Class and Collective Members are employed by Defendant in a similar manner throughout the United States, including in North Carolina, including in this judicial district, and perform work materially similar to Plaintiff.

35.     Class and Collective Members perform their jobs under Defendant's supervision using materials and technology approved and supplied by Defendant.

36.     Class and Collective Members are required to follow and abide by Defendant's common work, time, and pay policies and procedures in the performance of their jobs.

37. At the end of each pay period, Class and Collective Members receive wages from Defendant that are determined by common systems and methods that Defendant selects and controls.

38. Plaintiff worked more than 40 hours in a week on at least one workweek during the two years before this Complaint was filed.

39. Upon information and belief, Class and Collective Members worked more than 40 hours in a week at least one workweek during the two years before this Complaint was filed.

40. As a matter of course, Defendant routinely denies Plaintiff, Class and Collective Members compensation for all hours worked, including minimum wage and overtime. Plaintiff and Collective Members are regularly compensated for less than the total amount of hours they actually work.

41. Class and Collective Members, including Plaintiff, are routinely too busy with work during the day to have time to take *bona fide* meal breaks. When Class and Collective Members were unable to take meal breaks, clerks and/or supervisors were instructed to artificially clock Class and Collective Members out and in so that the time records showed a 30-minute meal break, even though one was not taken. As a matter of practice, Class and Collective Members, including Plaintiff, are instructed to continue working throughout the entire day including during meal breaks. For example, Plaintiff, Class and Collective Members are often instructed to train and/or assist other workers with their work during meal breaks. Plaintiff, Class and Collective Members are also required to remain on call and are expected to answer their supervisors for work-related issues that often arise during meal breaks. This time spent working through these automatically deducted meal breaks goes unrecorded and uncompensated, even though it should be compensated at minimum wage or overtime rates under the FLSA and NCWHA.

42.    In addition, Class and Collective Members, including Plaintiff, are regularly required to work approximately 20 minutes or more prior to clocking in at the beginning of their shifts. For example, Plaintiff and other Class and Collective Members were required to don and clean their personal protective equipment, including safety vests—which Defendant required to be clean and free of holes at Plaintiff's and other Class and Collective Members' expense—and steel toed boots; attend safety meetings, during which they were required to stretch before working; and obtain tools and equipment like pallet jacks from the equipment room, before being clocked in by a clerk or supervisor. This time spent working while "off-the-clock" goes unrecorded and uncompensated, even though it should also be compensated at minimum wage or overtime rates under the FLSA and NCWHA.

43.    Class and Collective Members, including Plaintiff, are further regularly required to continue working for approximately 30 minutes or more after clocking out at the end of their scheduled shifts, at least three times per week if not more, in order to complete additional work duties, including: helping other workers unload; cleaning up the dock and making sure the dock was free of saran wrap; returning and charging equipment such as pallet jacks and forklifts back at the equipment room; and doffing their personal protective equipment. Defendant, as a matter of practice, does not permit Plaintiff, Class and Collective Members to clock back in until the following day. This time spent working while "off-the-clock" goes unrecorded and uncompensated, even though it should also be compensated at minimum wage or overtime rates under the FLSA and NCWHA.

44.    Further, in response to the Covid-19 pandemic, Defendant requires Class and Collective Members, including Plaintiff to undergo a temperature check prior to being permitted to clock in for the start of their scheduled shifts. Defendant routinely make Plaintiff, Class and

Collective Members wait in line for these temperature checks at the beginning of their shift while they are "off-the-clock". Plaintiff, Class and Collective Members are forced to wait at least one minute, and sometimes longer, before clocking in for the beginning of their shifts. This time spent waiting for and undergoing temperature checks should also be compensated at minimum wage or overtime rates under the FLSA and NCWHA, but nevertheless goes unpaid.

45.     Plaintiff is informed, believes, and thereon alleges that Defendant's same automatic meal break deduction protocol and unlawful timekeeping and compensation policies and practices have at all relevant times been similar for Plaintiff, Class, and Collective Members regardless of location and assignment nationwide, including in North Carolina.

46.     Plaintiff, Class, and Collective Members worked and continue to work hours for Defendant that are not recorded and for which Plaintiff, Class, and Collective Members are not compensated, despite Defendant having knowledge that such hours are worked. Accordingly, Plaintiff, Class, and Collective Members are underpaid for hours they actually worked, often resulting in their hourly rates failing well below the requisite minimum wage rates and overtime rates.

47.     Due to Defendant's unlawful timekeeping and compensation policies and practices, Defendant does not pay Plaintiff, Class, and Collective Members hourly rates that meet the minimum wage requirement and does not pay them a premium rate of time-and-a-half for all hours worked over 40 in a work week.

48.     As a result of Defendant's common pay, timekeeping, and recordkeeping practices, Plaintiff, Class, and Collective Members have not been and are not compensated for all hours worked including all overtime hours, and their hourly rates of pay often fall below the minimum wage.

49. Based on information and belief, Defendant promises to provide Plaintiff and Class Members are also provided vacation time and pay. However, after separation from employment, Plaintiff and Class Members are not provided payment for any unused vacation time.

50. Defendant promised to provide Plaintiff vacation time and pay, but after his separation from employment, and even after Plaintiff's multiple attempts to obtain payment for the promised vacation pay, Plaintiff was not provided these benefits despite Defendant's explanations that vacation time and pay would be provided.

51. Defendant did not notify, whether through policy, practice, or otherwise, Plaintiff and other Class Members of any change in its promise to pay vacation pay.

52. Defendant's conduct, as set forth herein, is and was willful and in bad faith, and has caused significant damages to Plaintiff, Class, and Collective Members.

## COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff incorporates by reference the allegations set forth above.

54. Plaintiff pursues his FLSA claims on behalf of the Collective pursuant to 29 U.S.C. § 216(b) as to claims for minimum wage violations, overtime violations, liquidated damages, and attorneys' fees and costs under the FLSA.

55. The Collective of similarly situated individuals is properly defined as follows:

> **All current and former hourly, non-exempt employees including, but not limited to, unloaders, non-exempt team leads, clerks, carriers, and other positions with similar job duties employed by Capstone Logistics, LLC throughout the United States, within the three years preceding the filing of this Action until final resolution of the case.**

56. Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA claims are similar to the claims of the members of the Collective.

57.     The Collective Members are similarly situated, as they have similar job duties and requirements and are subject to a common policy, practice, or plan as stated herein. Such members are subject to a common policy, practice, or plan that requires them to work without compensation in violation of the FLSA.

58.     Defendant denies Collective Members minimum wage and overtime pay for all hours worked over forty (40) per work week. Plaintiff worked for Defendant as an unloader, team lead, clerk, and supervisor in North Carolina. Throughout his employment, Plaintiff was subjected to the same pay practices and is aware that other employees were subjected to the same improper timekeeping practices, minimum wage and overtime violations, as well as the other statutory violations discussed herein.

59.     Collective Members perform the same or similar work as Plaintiff, and regularly work or have worked in excess of forty hours during a work week.

60.     Although Defendant permits and/or requires Collective Members to work upwards of 50 hours or more per work week, Defendant fails to ensure them compensation for all hours worked. As a result, Collective Members' hourly rates of pay often fell below minimum wage, and they did not receive proper overtime compensation.

61.     Plaintiff is representative of the Collective Members in that he performed similar job duties as the Collective Members, was subjected to the same company-wide policies, and was similarly subjected to wages below the minimum wage requirement on the basis of uniform company-wide policies and practices. Plaintiff is acting on behalf of the Collective Members' interests as well as Plaintiff's own interests in bringing this action.

62. Plaintiff will fairly and adequately represent and protect the interests of Collective members. Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

63. Although the exact amount of damages may vary among Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to Collective Members.

64. The similarly situated Collective Members are known to Defendant, are readily identifiable, and can be located through Defendant's records. They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for minimum wage and overtime compensation, liquidated damages, prejudgment interest, and attorneys' fees and costs.

65. Unless the Court promptly issues such notice, the numerous similarly situated current and former employees of Defendant nationwide whose hourly rates are diluted, are denied compensation for all hours worked, including minimum wage, and are denied overtime in violation of the FLSA will be unable to secure unpaid back wages, which have been unlawfully withheld by the Defendant.

## NORTH CAROLINA CLASS ALLEGATIONS

66. Plaintiff brings state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the "North Carolina Class," which is comprised of:

> **All current and former hourly, non-exempt employees, including but not limited to, unloaders/lumpers, team leads, clerks, carriers, and other positions with similar job duties employed by Capstone Logistics, LLC within the State of North Carolina at any time during the two years preceding the filing of this Complaint through final resolution of the action.**

67.     <u>Numerosity</u>. The number of members in the North Carolina Class is exceeds forty and is believed to be at least in the hundreds. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the North Carolina Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the North Carolina Class will be determined from Defendant's records, as will the compensation paid or not paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the North Carolina Class and Defendant.

68.     <u>Typicality</u>. Plaintiff's claims are typical of the North Carolina Class because, like the members of the Class, Plaintiff was subject to Defendant's uniform policies and practices and were compensated in the same manner as others in the North Carolina Class. Defendant failed to ensure proper timekeeping of the hours worked by Plaintiff and North Carolina Class Members, thereby diluting their hourly rates to levels below the minimum wage and failing to compensate Plaintiff and North Carolina Class Members for all hours worked, including overtime compensation for their overtime hours worked. Members of the North Carolina Class work substantially more than forty (40) hours in a week as non-exempt employees but are uniformly denied proper compensation to which they are owed. Plaintiff and the North Carolina Class have been and are under-compensated as a result of Defendant's common policies and practices which fail to comply with North Carolina law. As such, Plaintiff's claims are typical of the claims of the North Carolina Class. Plaintiff and members of the North Carolina Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein.

69.     <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the North Carolina Class because it is in his interest to effectively prosecute the

claims herein alleged in order to obtain the unpaid wages and penalties required under North Carolina law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the North Carolina Class he seeks to represent.

70. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

a. Whether Plaintiff and the North Carolina Class work more than forty (40) hours in a work week;

b. Whether Defendant pays Plaintiff and the North Carolina Class on an hourly rate basis and/or piece-rate basis;

c. Whether Defendant fails to compensate Plaintiff and the North Carolina Class for all hours worked;

d. Whether Defendant promised to and failed to pay Plaintiff and the North Carolina Class vacation pay;

e. Whether Defendant fails to pay Plaintiff and the North Carolina Class at the state-mandated minimum wage rate;

f. Whether Defendant fails to pay Plaintiff and the North Carolina Class overtime wages for all hours worked over forty (40) in a work week;

g. Whether Defendant fails to pay Plaintiff and the North Carolina Class at the state-mandated overtime rate;

h. Whether Plaintiff and the North Carolina Class are entitled to liquidated damages;

i. Whether Plaintiff and the North Carolina Class are entitled to statutory penalties;

j. The proper measure of damages sustained by Plaintiff and the North Carolina Class; and

k. Whether Defendant's actions are "willful."

71. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the North Carolina Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the North Carolina Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

72. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual North Carolina Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the North Carolina Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the North Carolina Class is readily identifiable from Defendant's records.

73. This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were and are uniform; (2) the burden is on Defendant to prove it properly compensated its employees including any potential exemptions that might apply;

and (3) the burden is on Defendant to accurately record hours worked by its employees. Ultimately, a class action is a superior form to resolve the North Carolina claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the North Carolina Class per applicable North Carolina laws.

**FIRST CAUSE OF ACTION**
**COUNT I**
**FLSA – Overtime Violations**
**(On Behalf of the Collective Members)**

74.     Plaintiff incorporates by reference the allegations set forth above.

75.     The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

76.     At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

77.     Defendant is a covered employer required to comply with the FLSA's mandates.

78.     Defendant violated the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work. 29 U.S.C. § 211(c).

79.     Plaintiff and the Collective are victims of uniform and company-wide compensation policies instituted by Defendant. These uniform policies, in violation of the FLSA, are applied to current and former non-exempt, hourly employees working throughout the United States, including in the State of North Carolina.

80.     Collective Members, including Plaintiff, are routinely too busy with work during the day to have time to take *bona fide* meal breaks. As mentioned above, Plaintiff and Collective Members are instructed to continue working throughout the entire day including during meal breaks. For example, Plaintiff and Collective Members are often instructed to train and/or assist other workers with their work during meal breaks. And when Class and Collective Members were unable to take meal breaks, clerks and/or supervisors were instructed to artificially clock out and in Class and Collective Members out and in so that the time records showed that they took their a 30-minute meal break, even though one was not taken.  Plaintiff and Collective Members are also required to remain on call and are expected to answer their supervisors for work-related issues that may arise during meal breaks.

81.     In addition, Collective Members, including Plaintiff, are regularly required to work for approximately 20 minutes or more prior to clocking in at the beginning of their shifts, and approximately 30 minutes or more after clocking out at the end of their scheduled shifts. This time spent working while "off-the-clock" goes unrecorded and uncompensated, even though it should also be compensated at minimum wage or overtime rates under the FLSA.

82.     Further, in response to the Covid-19 pandemic, Defendant requires Collective Members, including Plaintiff to undergo a temperature check prior to being permitted to clock in for the start of their scheduled shifts. Defendant routinely make Plaintiff and Collective Members wait in line for these temperature checks at the beginning of their shift while they are "off-the-clock". Plaintiff and Collective Members are forced to wait at least one minute, and sometimes longer, before clocking in for the beginning of their shifts.

83. Upon information and belief, Defendant's violative overtime practices occur in a similar fashion across Defendant's locations throughout the United States, regardless of position or assignment.

84. Plaintiff and Collective Members are entitled to damages equal to the mandated pay, including overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

85. Defendant has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

86. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct which demonstrates a willful and/or reckless disregard for the provisions of the FLSA. Defendant has been sued for wage violations in previous lawsuits related to their pay practices for non-exempt hourly employees. Defendant was therefore on notice of its FLSA obligations and did not correct the violative practices.

87. As a result of the aforesaid violations of the FLSA's provisions, pay, including overtime compensation, has been unlawfully withheld by Defendant from Plaintiff and the Collective. Accordingly, Defendant is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

88. Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

# COUNT II
## FLSA – Minimum Wage Violations
### (On Behalf of the Collective Members)

89. Plaintiff incorporates by reference the allegations set forth above.

90. Defendant violates the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage for such work. 29 U.S.C. § 211(c).

91. Collective Members, including Plaintiff, are routinely too busy with work during the day to have time to take *bona fide* meal breaks. As previously mentioned, Plaintiff and Collective Members are instructed to continue working throughout the entire day including during meal breaks. For example, Plaintiff and Collective Members are often instructed to train and/or assist other workers with their work during meal breaks. And when Class and Collective Members were unable to take meal breaks, clerks and/or supervisors were instructed to artificially clock out and in Class and Collective Members out and in so that the time records showed that they took their a 30-minute meal break, even though one was not taken. Plaintiff and Collective Members are also required to remain on call and are expected to answer their supervisors for work-related issues that may arise during meal breaks.

92. In addition, Collective Members, including Plaintiff, are regularly required to work for approximately 20 minutes prior to clocking in at the beginning of their shifts, and approximately 30 minutes after clocking out at the end of their scheduled shifts. This time spent working while "off-the-clock" goes unrecorded and uncompensated, even though it should also be compensated at minimum wage or overtime rates under the FLSA.

93. Further, compensation provided to Plaintiff and other Collective Members is not paid finally, unconditionally, free and clear of deductions and/or kickbacks. Defendant requires

Plaintiff and other Collective Members to incur numerous work-related expenses, including for the payment of steel-toed boots, which may be only partially compensated, and for the payment for maintenance of safety vests. For example, Plaintiff, like other Collective Members, was informed he would receive a Boot Barn voucher of approximately $100 to partially cover the purchase of steel-toed boots required by Defendant, but Plaintiff did not receive such voucher.

94.     As a result, Defendant improperly dilute Plaintiff's and the Collective Members' regular hourly rates of pay to levels below the federal minimum wage and have not compensated Plaintiff and the Collective Members for all hours worked.

95.     Defendant has not paid and continues to refuse to pay Plaintiff and the Collective Members at the federally-mandated minimum wage for all hours worked during each work week.

96.     Defendant violated the FLSA minimum wage by not properly compensating Plaintiff and the Class Members for all hours worked in a work week, thereby diluting their regular hourly rate below the minimum wage of $7.25.

97.     Defendant's minimum wage violations were and are willful.

98.     As a result of Defendant's FLSA minimum wage violations, Plaintiff and Collective Members are entitled to recover unpaid wages dating three years from the date of this filing of this Complaint, plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action.

99.     Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

**COUNT I**
**NCWHA – Failure to Pay Minimum Wage**
**(On Behalf of the North Carolina Class)**

100.    Plaintiff incorporates by reference the allegations set forth above.

101.    As detailed above, Defendant failed to, and continues to fail to, compensate Plaintiff and North Carolina Class Members with at least the minimum wage for all hours worked.

102.    North Carolina law requires an employer to pay its employees all wages accruing to the employee. N.C. Gen. Stat. § 95-25.6.

103.    Defendant is required to pay each employee at or above the minimum wage rate of $7.25 per hour for all hours worked.

104.    During the applicable statutory period, the NCWHA was in full force and effect and required that Plaintiff and Class Members receive the minimum wage for all hours worked.

105.    Plaintiff and Class Members are not compensated at least at the minimum wage rate for all time worked for Defendant. Pursuant to the NCWHA, Plaintiff and Class Members are entitled to be compensated at least at the applicable mandated minimum wage rate for all time worked.

106.    Plaintiff and Class members are entitled to recover unpaid minimum wages under the NCWHA in a civil action.

107.    Because of Defendant's policies and practices with regard to compensating Plaintiff and Class members, Defendant willfully fails to pay minimum wages as required by the NCWHA. Defendant dilutes Plaintiff's and Class Members' regular hourly rates of pay below the minimum wage by improperly diluting Plaintiff's and the Class Members' regular hourly rates of pay below the minimum wage by requiring them to perform "off-the-clock" work—including but not limited to work performed during automatically deducted meal breaks, work performed prior to and after

clocking out—which adds to the actual hours worked by Plaintiff and Class Members. When the remuneration received by Plaintiff and Class Members is divided by the actual hours worked, Plaintiff and Class Members are frequently compensated below the statutory minimum wage rate.

108. Plaintiff and Class Members are and have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to the NCWHA. N.C. Gen. Stat. § 95-25.22.

109. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**COUNT II**
**NCWHA – Overtime Violation**
**(On Behalf of the North Carolina Class)**

110. Plaintiff incorporates by reference the allegations set forth above.

111. Defendant does not compensate Plaintiff and Class Members with the appropriate overtime rate for work performed in excess of 40 hours per week.

112. The NCWHA requires employers to pay overtime for all hours worked in excess of 40 per workweek at a rate of one-and-one-half times the employee's regular rate of pay. N.C. Gen. Stat. § 95-25.4.

113. Plaintiff and Class Members are not exempt from the overtime requirements under the NCWHA.

114. Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs to Plaintiff and Class Members in violation of the NCWHA.

115. Accordingly, Plaintiff, on behalf of himself and Class Members, seeks damages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and

liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to the NCWHA. N.C. Gen. Stat. § 95-25.22.

116.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**COUNT III**
**NCWHA – Payment of Final Wages Violation**
**(On Behalf of the North Carolina Class)**

117.    Plaintiff incorporates by reference the allegations set forth above.

118.    The NCHWA provides that employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday, or if the wages due are based on bonuses, commissions, or other forms of calculation, such wages are due on the first regular payday after the amount because calculable when a separation occurs.  N.C. Gen. Stat. § 95-25.7. Such wages are not forfeited unless the employee is notified in accordance with Section 95-25.13.

119.    The NCWHA provides that although employers are not required to provide vacation pay plans for employees, "if an employer provides these promised benefits for employees, the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice. Employees shall be notified in accordance with G.S. 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay. Employees not so notified are not subject to such loss or forfeiture." N.C. Gen. Stat. § 95-25.12.

120.    The NCWHA further provides that employers who violate the provisions of Section 95-25.12 are liable to affected employees for their unpaid amounts due under Section 95-25.12, plus interest at the legal rate set forth in Section 24-1, from the date each amount first came due. N.C. Gen. Stat. § 95-25.22(a).  In addition, the NWCHA provides that such employers are further liable for liquidated damages in an amount equal to the amount found to be due, "provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation

was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section." N.C. Gen. Stat.. § 95-25.22(d).

121. Accordingly, Plaintiff, on behalf of himself and Class Members, seeks damages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to the NCWHA. N.C. Gen. Stat. § 95-25.22.

122. Plaintiff was provided vacation time and pay. However, after separation from employment, and even after Plaintiff's multiple attempts to obtain payment for the promised vacation pay, Plaintiff was not provided these benefits despite Defendant's explanations that vacation time and pay would be provided.

123. Based on information and belief, Defendant did not notify, whether through policy or practice or otherwise, Plaintiff and other Class Members of any change in its promise to pay vacation pay.

124. Based on information and belief, other Class Members were also promised vacation time and pay but were not provided vacation pay at the end of their employment.

125. Accordingly, Plaintiff, on behalf of himself and Class Members, seeks damages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to the NCWHA. N.C. Gen. Stat. § 95-25.22.

126. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## JURY DEMAND

127.    Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter the following relief:

i.    Declaration that Defendant's pay practices violate the FLSA;

ii.    Declaration that Defendant's pay practices violate the NCWHA;

iii.    An order allowing Plaintiff to notify Collective Members of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

iv.    An order certifying Plaintiff's North Carolina state law claims as a class action pursuant to Federal Rule of Civil Procedure 23;

v.    An order awarding Plaintiff and the Collective Members back pay equal to the amount of all unpaid wages, plus an equal amount in liquidated damages for willful violations of the FLSA;

vi.    An order awarding Plaintiff and the Collective Members litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the FLSA;

vii.    An order awarding Plaintiff and Class Members back pay equal to the amount of all unpaid wages, including vacation pay, plus an equal amount in liquidated damages for violations of the NCWHA.

viii. An order awarding litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the NCWHA and/or Fed. R. Civ. P. 23(h); and

ix. Any other relief to which Plaintiff, Class and Collective Members may be entitled.

Dated: June 30, 2022          Respectfully submitted,

SCHNEIDER WALLACE COTTRELL KONECKY LLP

*/s/ John J. Nestico*
John J. Nestico (N.C. SBN 39457)
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Tel: (510) 740-2946; Fax: (415) 421-7105
jnestico@schneiderwallace.com

Carolyn H. Cottrell (Cal. SBN 166977)*
Ori Edelstein (Cal. SBN 268145)*
Michelle S. Lim (Cal. SBN 315691)*
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

* - To apply for admission *Pro Hac Vice*

*Counsel for Plaintiff, Class, and Collective Members*